**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

**No. 26-10915-BB**

**CHARLES C. FORCE,**
**Appellant,**
**v.**
**CAPITAL ONE, N.A., et al.,**
**Appellees.**

**On Appeal from the United States District Court**
**for the Middle District of Florida**
**Case No. 3:25-cv-00633-JEP-MCR**

# APPELLANT'S CORRECTED INITIAL BRIEF

**Charles C. Force**
**3735 Rubin Road**
**Jacksonville, Florida 32257**
**305-587-1901**
**force@countermail.com**
**Pro Se Appellant**

## TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS AND DISCLOSURE STATEMENT........................................................................................2**
**RULE 28-1(c) STATEMENT REGARDING ORAL ARGUMENT............2**

**TABLE OF AUTHORITIES.......................................................................4**

**I. JURISDICTIONAL STATEMENT..........................................................5**
**II. ISSUES PRESENTED..............................................................................5**
**III. STATEMENT OF CASE AND FACTS..................................................9**
**IV. SUMMARY OF THE ARGUMENT........................................................15**
**STANDARD OF REVIEW..........................................................................18**
**V. ARGUMENTS..........................................................................................19**
**VI. CONCLUSION / RELIEF REQUESTED................................................67**

**VII. CERTIFICATE OF SERVICE................................................................72**
**VIII. CERTIFICATE OF COMPLIANCE....................................................72**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Plaintiff–Appellant Charles C. Force certifies that the following have an interest in the outcome of this case:

1. Capital One Financial Corporation [NYSE: COF], Parent Corporation of Defendant Capital One, N.A.
2. Capital One, National Association, Defendant–Appellee
3. Derke, Eleni Elia, Judge, Defendant–Appellee
4. Duthiers, Tricia J., Counsel for Defendant Capital One, N.A.
5. Florida Office of the Attorney General, Counsel for Defendants–Appellees Derke and Greene
6. Force, Charles C., Pro Se, Plaintiff–Appellant
7. Gold, Michael A., Counsel for Defendant Capital One, N.A. and Gustavo Ramiro Kruss
8. Greene, Marquita, Magistrate Judge, Defendant–Appellee
9. Howard, Marcia Morales, United States District Judge (former)
10. Kemp-Gerstel, Andrew, Counsel for Defendant Capital One, N.A.
11. Kruss, Gustavo Ramiro, Defendant–Appellee
12. Liebler, Gonzalez & Portuondo, Counsel for Defendant Capital One, N.A.
13. Pollack & Rosen, P.A., Counsel for Defendant Capital One, N.A.
14. Pratt, Jordan Emery, United States District Judge
15. Richardson, Monte C., United States Magistrate Judge
16. Spears, Sara E., Assistant Attorney General, Counsel for Defendants–Appellees Derke and Greene
17. Spinozza, Kevin, Counsel for Defendant Capital One, N.A.
18. Starks, Michael D., Counsel for Defendant Capital One, N.A.

Pursuant to Eleventh Circuit Rule 26.1-2(c), the undersigned certifies that this Certificate of Interested Persons and Corporate Disclosure Statement is complete.

**Rule 28-1(c) STATEMENT REGARDING ORAL ARGUMENT**

Appellant submits that oral argument is not required because this appeal presents record-based procedural and legal issues reflected on the district court docket, and no transcripts are required for resolution of the issues presented.

## V. ARGUMENTS

A. Order 80 Did Not Provide Clear Notice Concerning the 54/71 Axis Within an Already Unstable Record ....................................................39
B. Order 80 Presented Dispersed Charges and Mixed Categories Without Separating What Conduct Could Justify Dismissal ..............................40
C. Order 97 Carried the Confusion of Order 80 Into the Final Dismissal ..................................................................................................................40
D. Court Converted Notice of Defendants' Stay Violation Into Obstruction-Based Dismissal ......................................................................42
E. The Court Abused Its Discretion by Misclassifying Judicial Notices and Court-Distorted Citation Conditions as Sanctionable Bad Faith ...........43
a. Distinct Record Events Were Improperly Aggregated Into a Manufactured Pattern of Bad Faith ........................................................44
b. Record-Preserving Judicial Notices Were Improperly Treated as Evidence of Bad Faith ...........................................................................45
c. The Record Reflects Court-Distorted Attributional and Citation-Form Conditions — Not Fabricated Authorities, Not Bad Faith .......................46
F. A Claimed "Pattern" Is Not a Finding and Cannot Support Dismissal Without Analysis ..........................................................................47
G. The Court Failed to Connect Any Specific Act by Appellant to Any Specific Delay, Disruption, or Prejudice ..............................................48
a. Distinct Procedural Events Were Improperly Distorted and Collapsed Into a Single Inference of Bad Faith ....................................................49
b. The Sanctions Narrative Falsely Attributed Aggregate Docket Activity to Appellant ..........................................................................................51
c. Bad Faith Was Improperly Inferred Without Identifying Concrete Causation ............................................................................................. 53
H. The Court Imposed a Terminal Sanction Without Proportionality or Consideration of Lesser Measures ....................................................54
**Table 1**. Court-Distorted Existing Authorities and Reference Conditions ..................................................................................................................58
**Table 2**. Court-Distorted Existing Authorities and Applicability Narratives ..................................................................................................................59
**Table 3.** Court-Distorted Existing Authorities and Reporter and Reference Conditions ...........................................................................................62
**Table 4**. Court-Distorted Citation Conditions Cannot Sustain a Fabrication and Bad Faith Narrative ........................................................................64

# TABLE OF AUTHORITIES

**Eleventh Circuit**

*Advanced Estimating Sys., Inc. v. Riney, 130 F.3d 996, 997–98,....................P. 31
*Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328................................P.23
*Betty K Agencies, Ltd. v. M/V MONADA,432 F.3d 1333, 1337–39... P. 49,55,57
*Danley v. Allen, 480 F.3d 1090, 1091–92 (11th Cir. 2007). ............................P.21
*Donaldson v. Clark, 819 F.2d 1551, 1558–60 (11th Cir. 1987)....................... p.36
*Mingo v. Sugar Cane Growers Co-op. of Fla., 864 F.2d 101..102–03,........... P. 55
**Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524–25 .............................. P.70,14
*In re Southeast Bank Corp., 97 F.3d 476, 478–79 (11th Cir. 1996) ...........P. 27,56
*Perez v. Wells Fargo N.A., 774 F.3d 1329, 1337–38 ................................. P.29,60
*Purchasing Power, LLC v. Bluestem Brands............................................ P. 43, 48
*Silva v. Pro Transport, Inc., 898 F.3d 1335, 1340 (11th Cir. 2018) ...........P. 53,58

**Supreme Court and Other Authorities**

*Catlin v. United States*, 324 U.S. 229, 233 (1945) .............................................P.13
**Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 861–64......p. 14, 70
*Aetna Life Insurance Co. v. Haworth, 300 U.S. 227 (1937) ........................ .. P. 23
*MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007) ...........................P.23
*Wilton v. Seven Falls Co., 515 U.S. 277 (1995) .............................................P.23

**Statutes**

28 U.S.C. § 1291 .................................................................................................P. 5
28 U.S.C. §§ 2201–2202 ................................................................................... P.22
28 U.S.C. § 144 ...................................................................................................P.70
28 U.S.C. § 455 .................................................................................................. P.70

**Rules**

Fed. R. App. P. 4(a) .................................................................................................P.5
*Fed. R. Civ. P. 6(b) ...................................................P.9,10,16, 27, 29, 30,32,56
Fed. R. Civ. P. 8(b)(6) .............................................................. P. 7,8,17,34, 35, 69
Fed. R. Civ. P. 8(b) ............................................................................................p.34,35
*Fed. R. Civ. P. 11(b) ........................................................................................ P.43
*Fed. R. Civ. P. 11(c)(1) ................................................................................P.36, 66
Fed. R. Civ. P. 11(c)(4) ......................................................................................P.55
Fed. R. Civ. P. 57 ................................................................................................P.22
Fed. R. Civ. P. 12(a)(1)(A)(i) ....................................... P. 6, 9, 28, 29, 34,32,55,65
*Fed. R. Civ. P. 55(a) ............ P. 6, 7, 9,10, 30,11, 16, 28, 29, 30,3132,55,69,71 72
Fed. R. Civ. P. 58(a) .........................................................................P. 27.56

Fed. R. Civ. P. 60(b)(4) ..........P.49
Fed. R. Civ. P. 79(a) .......... P. 11,37,56

**Local Rules**

M.D. Fla. Local Rule 2.01(a) ..........P24,67
M.D. Fla. Local Rule 2.02(a) .. ... ... ... ..........P.24,67
M.D. Fla. Local Rule 3.01(g) .......... P. 43,62,65,

## I. JURISDICTIONAL STATEMENT

This appeal arises from a final order of the United States District Court for the Middle District of Florida dismissing the action and terminating the case. The district court entered its order of dismissal at Doc.97.

This Court has jurisdiction under 28 U.S.C. § 1291 because the order appealed from is a final decision disposing of all claims of all parties.

Appellant filed timely notice of appeal on 03/23/2026 Doc.99 within the time prescribed by Appellate Procedure 4(a).

## II. ISSUES PRESENTED

**Issue 1 — Defective Termination of Declaratory-Relief Action Without Resolution of the Federal Validity Questions Presented**

Whether district court may terminate a declaratory-relief action without resolving the federal validity questions presented, while relying on unresolved procedural disputes as grounds for dismissal.

**Issue 2 — Defective Termination Without Adjudication of Presented Claims**

Whether the district court could terminate and close the case while dispositive motions and record-supported issues remained pending and unadjudicated on the docket.

**Issue 3 — Asymmetrical Accommodation of Defendants' Procedural Defaults and Attorney-Authority Defects**

Whether the district court erred by leaving unauthorized attorney and lead-counsel designation defects unresolved, retroactively accommodating Defendants' procedural defaults, shielding Defendants from rule-based consequences, and converting Plaintiff's challenges into dismissal grounds.

**Issue 4 — Mandatory Rules Disregarded Through Retroactive phantom-Order Effect Without a Written, Signed, and Filed Order**

Whether the district court could permit untimely filings submitted 30 to 48 days after Rule 12(a)(1)(A)(i) deadline through retroactive phantom-order effect unsupported by a timely Rule 6 request, required findings, or a written, signed, and filed order, while disregarding Rule 12(a)(1)(A)(i) deadlines that had already expired, effectively shielding Defendants from Rule 55(a) default consequences, while disregarding enforcement of Rule 55(a) default consequences that had already attached despite Plaintiff's motions invoking those mandatory procedures.

**Issue 5 — Mandatory Rules Disregarded Through Retroactive "Accommodation" of Defense Procedural Defects**

Whether the district court could leave attorney-authority, appearance, and lead-counsel defects unresolved, rely on filings whose validity remained unadjudicated, and treat the default-displacing retroactive effect described in Issue 4 as another defense-side procedural accommodation while converting Plaintiff's challenges into dismissal grounds.

**Issue 6 —Reliance on a Distorted or Incomplete Record**

Whether the district court could strike judicial notices and record-preserving filings, court-distort them into a sanctions narrative of "delay," "disruption," and "bad faith," and then dispose of the action while declining to adjudicate the underlying validity issues those filings preserved.

**Issue 7 — Failure to Adjudicate Allegations Admitted by Operation of Rule 8(b)(6)**

Whether the district court could dispose of the action without addressing allegations admitted by operation of Rule 8(b)(6), **after striking Plaintiff's filings**

**preserving those admissions and thereby shielding Defendants from answering the core allegations of the Complaint.**

**Issue 8 — Sanctions Dismissal Based on Unclear OSC Notice and Court-Distorted Citation and Filing Conditions**

Whether the district court could dismiss the action as a sanction where the Order to Show Cause did not provide clear notice of the specific conduct that could justify dismissal, and where the court distorted and substituted distinct citation conditions, procedural events, and record-preserving filings into findings of bad faith.

**Issue 9 — Disposition Without Resolving Validity Issues Presented**

Whether the district court could terminate a declaratory-relief action while leaving unresolved disqualification, attorney-authority, jurisdictional-nullity, record-integrity, and procedural-validity challenges affecting the proceedings on which dismissal rested.

## III. STATEMENT OF THE CASE AND FACTS

## A. Nature of the Action

Plaintiff filed this action in United States the District Court for the Middle District of Florida seeking declaratory relief Doc 1 at 1. The complaint did not seek monetary damages, except for nominal relief in the **amount of one dollar**. This action challenged the legal validity of proceedings and actions reflected on the court's docket.

## B. Untimely Filings by Defendants

Defendants did not file responses within the 21-day period required by Rule 12(a)(1)(A)(i). Defendants filed responses approximately 30 and 48 days after the Rule 12(a) deadlines had expired

The docket reflects no pre-deadline extension motion or Rule 6(b) excusable-neglect motion. Upon expiration of those deadlines without a responsive pleading or approved extension, Rule 55(a) required entry of default. Appellant filed motions seeking entry of default, but no default was entered.

Well after the expiration of those deadlines, the court ruled that the untimely filings would be ***"accepted as if timely filed".*** applied RETROACTIVELY 30 and 48 days after Rule 12(a) deadlines had expired**, WITHOUT**:

a. written signed order and filed with the Clerk,
b. motion for extension that is required PRIOR to the deadline expiration before such a motion may be considered, and

c. any findings of good cause statement that is required in such an order under Rule 6(b).

The same purported ruling struck Plaintiff's pending petitions for entry of default and related motions to compel that ministerial act which were already pending on the docket during those respective 30 and 48 days. That retroactive ruling displaced rule-based consequences that had already attached. The docket does not reflect a written, signed order setting forth findings or reasoning supporting that determination. The ruling is referenced in connection with Doc.55, <u>but no corresponding written order signed and filed with the clerk appears on the docket.</u>

<u>The Court's disregard of Federal Rules effectively and retroactively shielded Defendants from the default consequences long after Plaintiff's properly filed default motions already invoked them.</u>

## C. Docket Entry No. 55

The docket reflects an electronic notation entry adjacent to a place holder identified as #55, which was treated in later proceedings as affecting procedural posture of the case, <u>although no corresponding written, signed, and filed order appears on the docket.</u> Appellant sought verification through a public records request, Doc.85 at 1-2. No such signed written order was produced. No document is available for review under that entry. The record further reflects that Docket

Entry #55 electronically referenced an allegedly "endorsed" order attributed to Judge Howard, **but no signed order was filed with the Clerk, no separate written order appears, and no docketed substance states the ruling, basis, or legal effect attributed to it under Fed. R. Civ. P. 79(a).** An electronic reference unsupported by any signed written order filed with the Clerk is incapable of altering deadlines, excusing untimely filings, or displacing Rules 12(a) and 55(a). Despite the absence of any written, signed, and filed order, subsequent proceedings treated the electronic placeholder at #55 as operative and gave it retroactive effect, in disregard of these cited Rules.

**D. Judicial Notices and Record-Preserving Filings**

Plaintiff filed judicial notices identifying procedural and docket defects.

These filings were not motions for relief, but preserved record-based issues. The dismissal order nevertheless repeatedly distorted these filings to Plaintiff as *"acting in bad faith"* and engaging in *"continued bad faith.",* again, a broad statement without a stated judicial basis. Doc 97 at 15.

**E. Striking of Filings**

The district court struck multiple Plaintiff's judicial notices. The stated basis included that the filings did not request relief. Doc.53 at 1–2; Doc.80 at 4, 6, 12. These rulings removed record-preserving materials from the docket. The later

dismissal order nevertheless relied upon a sanctions narrative materially shaped by the absence of those removed filings.

**F. Counsel Admission and Authority Defects**

Defendants' answers included filings by an attorney not admitted to the Middle District and by two attorneys lacking required lead-counsel notices when filed. Plaintiff challenged unadmitted-attorney filings, but was not adjudicated before disposition.

**G. Defective OSC Notice and Sanctions Framework**

The district court issued a defective order to show cause. Plaintiff responded. The order was structurally deficient, unclear, and contradictory; it mixed technical defects, citation issues, factual errors, and judicial notices without identifying what conduct could justify dismissal. The dismissal order then used court-distorted and substituted citations and mismatches as sanctions support. Doc.80 at 2, 11–12 and Doc.97 at 5–15.

**H. Pending Motions and Unresolved Issues**

At the time of disposition, the docket reflected:

- Motions concerning default procedures
- Motions challenging filings by counsel
- Judicial notices identifying record-based issues

The docket does not reflect rulings resolving those matters prior to termination of the case.

**I. Dismissal and Closure of the Case**

The district court entered order dismissing the action. The order directed that all pending matters be terminated and the case closed. Doc.97, p.16. Although labeled 'without prejudice,' the order is final in effect because it ended the litigation and foreclosed adjudication of all pending matters; see *Catlin v. United States*, 324 U.S. 229, 233 (1945), **because finality is determined by effect rather than label,** creating **a structural inconsistency** between the form of the dismissal and its operative effect on the record.

The dismissal was based on procedural grounds, including findings related to rule compliance that are not supported by the record and that distorted filings reflected on the docket, as demonstrated by the factual errors identified in this brief. The sanctions narrative distorted unrelated procedural events while failing to distinguish delays, procedural activity, and irregularities attributable to Defendants, counsel, judicial reassignment, and the Court itself.

The order did not adjudicate the declaratory relief claims presented in the complaint or the procedural validity issues identified in the filings. The order also denied Plaintiff's motion for recusal as moot Doc.97 at 16, without adjudicating

the bias allegations presented in that motion, and then terminated the action in its entirety, notwithstanding that unresolved disqualification issues may bear on the validity of the proceedings, and the availability of vacatur under Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 861–64 (1988); especially where reassignment occurred before any ruling rejected the bias allegations, Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988), applies an objective appearance-of-impartiality standard. **A court cannot terminate an action on the basis of proceedings whose integrity is being directly challenged on disqualification grounds while simultaneously declining to adjudicate whether those proceedings remain valid under *Liljeberg* and *Parker*.** There was no such adjudication on the record of the manifest bias supporting the disqualification.

**J. Effect of the Disposition**

The dismissal terminated the action and closed the case. The disposition left unresolved disqualification-related validity issues arising from allegations of manifest bias bearing directly on the validity of prior proceedings incorporated into the dismissal, including representation-conflict-of-interest disqualification issues raised in Doc.76 at 1-6 and later removed from the active docket without substantive adjudication of their underlying validity implications, amid the broader pattern of asymmetrical procedural enforcement reflected throughout the record. ***Liljeberg*** recognizes vacatur may be required where unresolved judicial

disqualification concerns undermine confidence in the integrity of the proceedings, and concluded the proceedings without adjudication of the underlying issues presented for declaratory relief. The resulting termination therefore substituted administrative closure for adjudication of the unresolved validity issues incorporated into the dismissal itself. **The Court could not terminate the action and then declare the recusal issues moot while simultaneously relying on the same challenged proceedings and sanctions narrative as a basis for dismissal.**

## IV. SUMMARY OF THE ARGUMENT

This appeal does not arise from a merits adjudication of Plaintiff's claims, but from a breakdown in the adjudicative process itself, in which the Federal Rules were both disregarded and misapplied, and the action was terminated without resolving the issues presented, including the declaratory relief claims reflected on the docket.

**First,** the district court relied on the electronic placeholder at Doc.55 as operative and gave it retroactive effect, although no written, signed, order filed with the clerk appears on the docket. That treatment altered the threshold procedural posture near the outset of the case by accepting untimely filings as if timely filed after Rule 12(a) deadlines had expired and Rule 55(a) consequences had already attached. Without a reviewable written, signed, and filed order, neither the parties nor the appellate court can determine the scope, basis, findings, or legal effect of the

purported ruling, and the later dismissal cannot be treated as independent of that altered posture.

**Second,** the district court permitted filings submitted approximately 30 to 48 days after the Rule 12 deadline to stand without any motion for extension filed before the expiration of the deadline and without any showing of excusable neglect. This effectively shielded those filings from the operative consequences of disregarded Rules 12(a), 6(b), and 55(a). At the same time, Plaintiff's motions seeking entry of default based on those missed deadlines <u>were struck sua sponte.</u>

**Third,** the district court struck, sua sponte, record-preserving judicial notices identifying matters reflected on the docket, and disposed of the case without addressing those matters. The resulting disposition rests on a distorted record from which filings preserving the procedural posture were removed, including instances in which Appellant's filings were disregarded, distorted, or repurposed into a sanctions narrative inconsistent with the record.

**Fourth,** the district court did not adjudicate dispositive motions and record-based challenges that remained pending at the time of dismissal, including challenges to filings made by counsel not admitted to practice before the court, thereby effectively shielding those filings from mandatory removal or legal-effect analysis.

Those filings were relied upon in disposing of the case without resolution of the challenge to their validity.

**Fifth,** the district court disposed of the action without addressing allegations that were not denied or substantively answered and that were therefore admitted under Rule 8(b)(6). The order does not reflect adjudication of those admitted matters.

**Finally,** the action sought declaratory relief concerning the legal validity of proceedings reflected on the docket. The district court dismissed the case on procedural grounds without resolving the procedural and jurisdictional defects presented.

Taken together, the record reflects that the case was terminated without adjudication of the issues presented, after reliance on a docket entry for which no written order appears, resulting in a distorted and procedurally asymmetric posture in which severe rule-based consequences were imposed selectively against the pro se Appellant while materially more serious procedural defects involving Defendants and counsel—including untimely filings, retroactive deadline treatment, and unresolved authority issues—were permitted to remain operative. A severe asymmetrical application of procedural Rules permeated the proceedings throughout this case. Materially serious procedural defects attributable to Defendants—including expired Rule 12 deadlines, displaced Rule 55

consequences, unjustified retroactive acceptance of untimely filings by the court, and unresolved unadmitted attorney-authority defects—**were met with RETROACTIVE CORRECTIVE ACCOMMODATIONS** by the court, while Plaintiff's alleged clerical, citation-related, and record-preserving filings, all curable and non-dispositive in nature, **were progressively distorted and conflated into a sanctions narrative culminating in dismissal.** These defects further undermine the integrity of the record itself, such that the resulting judgment cannot be meaningfully reviewed on appeal without first restoring the record to a complete and accurate state. Under these circumstances, the resulting dismissal does not reflect a valid adjudication of the action for DECLARATORY RELIEF.

## STANDARD OF REVIEW

Dismissal as a sanction is reviewed for abuse of discretion. Legal questions, including disregard of federal rules, jurisdictional issues, attorney-authority defects, and whether proceedings are void or legally effective, are reviewed de novo. Review is entirely record-based. The relief requested is vacatur of the dismissal and remand to restore the case to the procedural posture that existed before the retroactive effect attributed to unsigned and unfiled electronic placeholder #55 displaced Rules 12(a) and 55(a), while unauthorized attorney

filings were permitted to remain perative in a declaratory action stemming from an underlying case barred by federal law.

## V. ARGUMENTS

The district court's dismissal cannot stand for multiple independent reasons, each reflected on the face of the record. The district court did not merely err in disregarding procedural Rules—it proceeded on a record that did not lawfully support the termination.

### 1. DEFECTIVE TERMINATION OF ACTION WITHOUT ADJUDICATION OF PENDING MATTERS AND CLAIMS

The district court terminated and closed this action while multiple motions and record-based issues remained pending on the docket, and did so without answering the dispositive federal question presented in the Complaint. This included failing to adjudicate preserved, dispositive objections prior to entry of a final ruling. The record reflects that, at the time of dismissal, the case included motions concerning default procedures, challenges to filings made on behalf of Defendants, and judicial notices identifying matters reflected on the docket. The Court terminated the case knowing that Defendants Kruss and Capital One had not answered the core allegations of the Complaint. Plaintiff documented the specific unanswered core allegations in Judicial Notices Docs. #79 and #83. In contradiction, the Court struck those filings in its dismissal, effectively shielding those Defendants from

answering the Complaint at all. The order of dismissal does not resolve those matters. Instead, the order dismissed the case and directed the Clerk to "terminate any other pending motions and close this case," without adjudicating those motions or giving any reason for leaving them unresolved.

The record separately reflects that Kruss had no legally effective answer to the Complaint on the docket at all. Kruss' purported response in lieu of answer was filed by attorney Gold after the Clerk's notice identified Gold's unresolved authority to practice before the Court Doc 88, and Plaintiff's motion to strike (Doc.92 at 2-5) challenged Gold's filings on that ground. That challenge was left unadjudicated at dismissal. This defect is independent of the Court's disregard of Rule 12(a) and independent of Kruss' failure to answer the core allegations. The Court therefore dismissed the case while Kruss had no adjudicated legal answer, no adjudicated valid defensive filing, and no ruling resolving Gold's authority to file for him.

A district court is required to adjudicate the issues presented before disposing of the action. Where motions remain pending that bear directly on the procedural posture of the case or the validity of filings relied upon in the proceedings, those matters must be resolved as part of the court's disposition. The record does not reflect such resolution here. The action sought declaratory relief concerning

whether the state court judgment was rendered in violation of federal law. The complaint did not seek damages beyond nominal relief, but instead presented issues concerning the procedural and jurisdictional validity of actions taken in the case. The order of dismissal does not address those issues. Instead, the court terminated the action on procedural grounds while leaving unresolved the matters that defined the scope of the case. The dismissal order Doc.97 at p.16) directs that all pending matters be terminated, but it does not reflect adjudication of those matters; see *Danley v. Allen*, 480 F.3d 1090, 1091–92 (11th Cir. 2007), which requires adjudication of presented matters. As a result, the disposition concludes the case without determining the issues presented for declaratory relief.

This sequence affects the validity of the dismissal. Closing the case without resolving the matters reflected on the docket left the underlying questions unanswered and prevented meaningful review. Motions challenging the validity of filings were not resolved. Motions seeking entry of default were not adjudicated. Judicial notices identifying record-based issues were stricken without later consideration of the matters they identified. The order did not reconcile those unresolved matters with termination of the action.

Under these circumstances, the case was closed without adjudication of the issues presented. A disposition that terminates the action without resolving the pending

matters and claims does not constitute a determination of the action and cannot serve as a proper basis for dismissal, and constitutes an abuse of discretion as a matter of law. For this reason, the dismissal should be vacated and remanded for adjudication of the issues reflected on the docket, including the federal question those issues present.

## 2. DISMISSAL OF A DECLARATORY ACTION WITHOUT ANSWERING THE FEDERAL QUESTION

**This action was brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, and Rule 57 to answer a concrete federal validity question. The Complaint sought only ONE DOLLAR nominal relief, and alleged constitutional and jurisdictional defects independently sufficient to render the state small claims court judgment void ab initio.**

**The Complaint also asserted that the underlying state collection action was barred by federal debt-collection law because verified validation of the claim was repeatedly demanded and willfully refused, including after notice to cease and desist, yet the state court ignored that federal bar and Defendants did not answer it in either the state or federal proceedings. No factual development, evidentiary weighing, or prudential balancing was required, and nothing remained for the court to do except answer the question presented.** The controversy was real, immediate, and fully justiciable.

Under Aetna Life Insurance Co. v. Haworth, 300 U.S. 227 (1937), and MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007), a concrete dispute affecting legal relations falls within federal judicial power. Declaratory discretion exists, but must be exercised under recognized standards, not used to avoid adjudication. See Wilton v. Seven Falls Co., 515 U.S. 277 (1995); Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328 (11th Cir. 2005). It instead terminated the action without answering the YES-or-NO federal-violation question presented, and without invoking or applying any Wilton/Ameritas declaratory-discretion framework that could justify declining adjudication of a justiciable declaratory claim. A court may decline declaratory jurisdiction only through reasoned application of recognized standards. The district court did not decline jurisdiction through Wilton/Ameritas abstention analysis, identify a parallel proceeding, apply the Ameritas guideposts, or explain why another forum should resolve the controversy. It may not dismiss a concrete federal validity question without answering it. Because the district court dismissed without adjudicating the claims or applying the governing framework, reversal is required.

### 3. FAILURE TO ADJUDICATE ATTORNEY-AUTHORITY DEFECTS WHILE RETROACTIVELY ACCOMMODATING DEFENDANTS' PROCEDURAL DEFAULTS

The record reflects that filings on behalf of Defendants were submitted by attorneys whose authority to practice before the United States District Court for the

Middle District of Florida was formally challenged and never adjudicated prior to dismissal. Plaintiff filed motions challenging the validity of those filings after the Clerk issued a docketed notice concerning counsel's admission status and compliance with the Local Rules governing practice before the Court. Doc.88, Doc.92, Doc.93.

The Clerk's notice placed the issue directly before the Court by identifying that counsel's authority to practice before the Middle District had not been established under the applicable Local Rules. The notice specifically directed attorney Gold to obtain membership or special admission before practicing before the Court, yet the docket did not reflect any timely cure of the identified authority defect before dismissal or before the Court relied on the challenged filings. Nor does the record reflect any adjudication resolving Plaintiff's motions challenging those filings before the Court relied upon them in determining the procedural posture of the case. The docket likewise does not reflect renewed notices of appearance establishing authority for multiple attorneys whose filings nevertheless remained operative throughout the proceedings, including filings relied upon in connection with dismissal of the action. Gold's designation as "lead counsel" under Local Rule 2.02(a) did not cure the separate requirement of membership or special admission to practice before the Middle District under Local Rule 2.01(a). Absent such authority, those filings are without legal effect. Spears's motion to dismiss

likewise remained operative for approximately four months despite the absence of a required lead-counsel designation. Meanwhile, Plaintiff's judicial notices were characterized as *"bad faith", "delay*" ,and *"disruption"*—without identified Appellant-caused delay—and ultimately converted into grounds for dismissal as a sanction.

This asymmetrical treatment of procedural defects permeated the proceedings. No comparable sanctions narrative or terminal procedural consequences were imposed against Defendants or counsel despite materially more serious defects — including unresolved appearance defects, unresolved authority defects, filings submitted long after the <u>Rule 12(a) response deadlines had expired, and retroactive accommodations displacing Rule 55(a) consequences after those consequences had already attached</u> — thereby altering the procedural posture of the case. The Court likewise did not strike the challenged filings submitted by unadmitted or procedurally unauthorized counsel, notwithstanding Plaintiff's motions directly requesting such relief after the Clerk's docketed notice identifying the unresolved authority deficiency. This effectively shielded those filings and counsel from the consequence of noncompliance. Meanwhile, Plaintiff's filings preserving those same procedural irregularities were distorted into evidence supporting dismissal.

The district court never reconciled this disparity before terminating the action. The dismissal order did not adjudicate whether the challenged filings were valid, did not determine whether counsel possessed authority to practice before the Court at the relevant times, and did not explain why unresolved attorney-authority defects were treated as curable or non-dispositive while Plaintiff's curable procedural defects were elevated into terminal sanctions. The dismissal likewise failed to reconcile how counsel could continue operating as purported lead counsel, file operative motions, and shape the procedural posture of the case while the foundational authority permitting such participation remained unresolved, effectively shielding that participation from the Local Rule consequences Plaintiff had invoked.

This unresolved asymmetry bears directly on the integrity and fairness of the proceedings. A court may not selectively enforce procedural rigor against one party while retroactively accommodating materially more serious procedural defects attributable to the opposing side. The resulting procedural posture therefore reflects unequal application of procedural standards, unresolved validity issues, and a sanctions framework applied asymmetrically throughout the proceedings.

Because the dismissal proceeded without adjudicating the validity of filings formally challenged, while simultaneously imposing severe procedural

consequences against Plaintiff, the resulting disposition cannot be sustained as a neutral or procedurally balanced adjudication. Under these circumstances, the dismissal should be vacated and the case remanded for adjudication of the unresolved attorney-authority and procedural-validity issues.

## 4. USE OF A RETROACTIVE PHANTOM ORDER CANNOT SUSTAIN DISMISSAL

The district court treated an electronic placeholder at #55 as operative and gave it retroactive effect, accepting untimely Rule 12 filings 'as if timely filed,' although no written, signed, and filed order exists to support that treatment. The docket label for #55 identified it as an "*ENDORSED ORDER*" attributed to Judge Howard, but no written, signed, separately filed, or otherwise reviewable order appears. No document states the ruling, basis, or findings**. Rule 79(a) required the docket to show the substance of any order; Rule 58(a) reinforces reviewability by written document where judgment effect is claimed.** See In re Southeast Bank Corp., 97 F.3d 476, 478–79 (11th Cir. 1996). An electronic reference unsupported by any written, signed, and filed order cannot alter deadlines, excuse late filings, displace Rule 55 consequences, or produce legal effect.

This was not a technical omission. Accepting post-deadline Rule 12 filings required a Rule 6(b) motion and excusable-neglect findings. The record reflects

neither. Without a written order, there is no indication that the governing rule was applied.

The resulting posture therefore rested on an unwritten ruling that accepted late filings and displaced rule-attached default related relief. Because the acceptance of untimely filings and the corresponding denial of default-related relief were based on that determination, subsequent actions in the case depended on a ruling that does not appear on the docket in written form. Because the electronic placeholder at #55 altered the threshold procedural posture near the outset of the case, after Rule 12(a) deadlines had expired and Rule 55(a) consequences had already attached, the later dismissal cannot be treated as independent of that retroactive phantom-order treatment. The dismissal therefore cannot stand and should be vacated for proceedings based on reviewable written, signed, and filed rulings.

### 5. FAILURE TO APPLY RULE 12(a) AND RULE 55(a) ALTERED THE PROCEDURAL POSTURE OF THE CASE

The Federal Rules of Civil Procedure establish clear requirements governing the time to respond to a complaint and the consequences of failing to do so. Under Rule 12(a)(1)(A)(i), a defendant must serve an answer or responsive motion within 21 days after being served with the summons and complaint. When a defendant fails to respond within that period, Rule 55(a) directs the clerk to enter default upon a proper showing.

The record reflects that Defendants did not file responses within the 21-day period required by Rule 12(a)(1)(A)(i). Filings on behalf of Defendants were submitted approximately 30 days after the deadline as to one defendant and approximately 48 days after the deadline as to another. At the time those filings were submitted, the deadlines established by Rule 12(a) had already expired.

The record does not reflect any motion for extension of time filed prior to the expiration of those deadlines, and no findings of excusable neglect were made to support any post-deadline relief. Nor does it reflect any motion establishing excusable neglect under Rule 6(b) for post-deadline relief, which governs requests for extensions made after a deadline has passed. In the absence of such a motion and supporting findings, the governing Rules do not provide a basis for accepting untimely filings after the deadline has expired.

Plaintiff filed motions seeking entry of default based on Defendants' failure to timely respond; see Perez v. Wells Fargo N.A., 774 F.3d 1329, 1337–38 (11th Cir. 2014) (explaining that Rule 55(a) required entry of default where a party failed to plead or otherwise defend against a claim for affirmative relief). Those motions invoked the procedures set forth in Rule 55(a), which provides for entry of default when a party has failed to plead or otherwise defend within the time required by

the rules. The record does not reflect that the clerk entered default or that the court compelled such entry.

Instead, the procedural posture reflected on the docket was altered by a determination that the untimely filings would be “accepted as if timely filed”. Doc. 95 at 2; ECM Tab, 55. That determination was attributed to the electronic placeholder at #55, and was given retroactive effect even though no corresponding written, signed, and filed order appears in the record. At that time, Plaintiff’s petitions for entry of default and related motions to compel that ministerial act were already pending, Defendants’ responsive filings had been submitted approximately 30 and 48 days after the Rule 12(a) deadlines, and Plaintiff had already moved for entry of default under Rule 55(a). The failure to timely respond had therefore already triggered the operation of Rules 12(a) and 55(a). No judicial act appears on the docket that lawfully alters those Rules as applied to those filings. The resulting phantom-order defect lacked a timely Rule 6(b) motion and the required good-cause or excusable-neglect findings, displaced rule-based consequences that had already attached, effectively shielded Defendants from entry of default on the record.

The acceptance of untimely filings without a motion for extension filed before the deadline, without a showing of excusable neglect after the deadline, and without a

written order setting forth the basis for such a determination departs from the procedures established by the Federal Rules; see *Advanced Estimating Sys., Inc. v. Riney*, 130 F.3d 996, 997–98 (11th Cir. 1997), and constitutes a procedural rewriting of the governing Rules rather than an application of them. At the same time, Plaintiff's motions invoking the default procedures provided by Rule 55(a) were not adjudicated, and were displaced by the court's reliance on the retroactive phantom-order treatment attributed to electronic placeholder #55.

The combined effect of these actions was to alter the procedural posture of the case, and was not harmless, because it displaced the default posture that had already attached under the rules prior to that determination, thereby materially affecting the course of the proceedings even if not the ultimate disposition. The procedural posture on which the dismissal rests therefore does not reflect the posture that existed under the Federal Rules at the time the deadlines expired, but instead reflects a posture created after the fact through a determination not set forth in any written order on the docket. Defendants' untimely filings were permitted to stand notwithstanding the expiration of the Rule 12 deadline, while Defendants were effectively shielded from the mandatory operation of Rule 55(a) mechanisms for addressing that failure. The record reflects repeated instances in which the governing Rules were not applied as written, or were displaced in determining the procedural posture of the case, including the failure to give effect to the default

posture that had already attached under Rules 12(a) and 55(a), which would have resulted in entry of default on the record **prior** to the court's disposition of the case, while the dismissal order simultaneously described Plaintiff as *"either unwilling or unable to comply with the Rules, Local Rules, and Court Orders*." This **reflects a consistent pattern of selective non-application of procedural rules** and enforcement of those Rules **operating in favor of Defendants and resulting in prejudice to the Appellant through the elimination of rule-based consequences that had already attached on the record.** This asymmetrical application of procedural Rules created a fundamentally unfair adjudicative environment. Because the disposition of the case proceeded on the basis of this altered procedural posture , the resulting dismissal rests on a record that does not reflect application of the governing Rules. Under these circumstances, the dismissal should be vacated and the case remanded for proceedings consistent with Rules 12(a), 55(a), and 6(b).

### 6. *STRIKING RECORD-PRESERVING FILINGS RESULTED IN* DISPOSITION ON AN INCOMPLETE RECORD

The record reflects that Plaintiff filed judicial notices identifying matters appearing on the docket, including procedural events and issues relevant to the posture of the case. These filings did not request relief, but were submitted to preserve record-based matters.

The district court struck these filings on the stated basis that they did not request relief. The order striking the filings does not identify a curable defect, does not

provide an opportunity to amend, and does not address the substance of the matters identified in those filings.

As a result, materials submitted to preserve issues reflected on the docket were removed from the record. The matters identified in those filings—including procedural events and challenges to the validity of actions taken in the case—were not addressed in rulings.

**A district court may decline to give weight to a filing, but the removal of filings that identify matters appearing on the docket has a different effect. Where such filings are stricken and not addressed, the record considered by the court no longer reflects the full set of issues presented by the parties.** A judicial notice is not a motion and does not seek relief. Indeed, that characteristic is inherent to judicial notices and does not supply a rule-based basis for removing them from the record. **No Federal Rule of Civil Procedure authorizes the striking of a judicial notice on that basis.** The court may determine whether to take notice (or not to) of the matters, but it does not possess authority to remove judicial notices pointing out information on the court record. The striking of those filings the eliminated record-preserving material that would otherwise define the procedural posture of appellate review, and their removal prevents that posture from being accurately reviewed.

## 7. FAILURE TO ADDRESS ADMITTED ALLEGATIONS UNDER RULE 8(b)(6)

The Federal Rules of Civil Procedure require a responding party to admit or deny the allegations in a complaint. See Fed. R. Civ. P. 8(b). Under Rule 8(b)(6), **allegations not denied are deemed admitted.**

The record reflects that the complaint presented allegations concerning the legal validity of proceedings and actions reflected on the docket. Those allegations were required to be answered under the Federal Rules. The record further reflects that Defendants did not timely respond within the period required by Rule 12(a)(1)(A)(i), and that no filing admitted or denied those allegations as required by Rule 8(b), and those allegations were therefore admitted by operation of Rule 8(b)(6) Doc.79; Doc.83. **The motions to dismiss therefore did not constitute legally meaningful responsive pleadings addressing the core allegations presented in the complaint**. **Where allegations are not denied in a responsive pleading, Rule 8(b)(6) provides that those allegations are admitted. Those admissions were not adjudicated before the Court sua sponte struck the filings documenting those admissions. Those filings expressly invoked Rule 8(b)(6) and requested recognition of those admissions,** including the **documented demonstration that no legally meaningful response addressing the core allegations had ever been filed**, **thereby removing from consideration filings**

**documenting the absence of timely denials reflected on the docket,** and effectively shielding Defendants from the admissions that Rule 8(b)(6) imposed **by operation of law**.

The order of dismissal does not address the status of those allegations. It does not identify which allegations were denied, does not reconcile the absence of timely responses, and does not address the effect of Rule 8(b)(6) on the matters presented in the complaint. A disposition resting on an inaccurate factual premise cannot stand. Instead, the case was disposed of on procedural grounds without addressing the allegations that were presented and not denied. The resulting disposition does not reflect adjudication of those admitted matters.

Where allegations are deemed admitted under Rule 8(b)(6), the court's disposition must account for those admissions. A dismissal that does not address admitted allegations does not resolve the matters presented in the complaint and therefore constitutes an abuse of discretion as a matter of law.

For this reason, the dismissal should be vacated and the case remanded for consideration of the allegations in accordance with Rule 8(b)(6).

## ***8. DISMISSAL CANNOT BE SUSTAINED AS A SANCTION BECAUSE THE ORDER TO SHOW*** **CAUSE DID NOT PROVIDE CLEAR NOTICE OR A VALID BASIS FOR TERMINATING THE ACTION**

The dismissal cannot be sustained as a sanction because the Order to Show Cause did not provide clear notice of the specific conduct that could justify dismissal, did not distinguish between technical defects and sanctionable conduct, and did not provide a meaningful opportunity to respond before imposing a terminal sanction. It presented dispersed and internally inconsistent grounds, failed to identify which conduct could support dismissal, and relied on tentative or ambiguous characterizations rather than clearly defined violations.

The Court abused its discretion and violated due process by imposing dismissal based on that confusing Order to Show Cause. The Fifth Amendment requires clear notice and a real opportunity to be heard before a severe sanction. In the sanctions context, the party must know the specific conduct that may justify sanctions and be heard. Donaldson v. Clark, 819 F.2d 1551, 1558–60 (11th Cir. 1987); Fed. R. Civ. P. 11(c)(1). Order 80 did not satisfy that requirement: it presented a confusing sanctions narrative without identifying what concrete conduct could justify dismissal. These defects require vacatur.

The central defect in the OSC Doc.80. is not only structural: it is self-contradictory. Judge Howard's OSC rested on the "false missing response posture created by the Court's own ECF entry at #80: ***"Plaintiff's obligation to respond to 54 Defendant Kruss's motion to dismiss is tolled pending the Court's resolution***

***of this Order"*** as if the response obligation remained open after this response had already been filed. In contradiction, the OSC Doc. 80 identified "Plaintiff's Opposition to Defendant Kruss Motion to Dismiss, Doc.71, then in sharper contradiction to its missing response posture, struck that same answer Doc.80 at 12. This Doc. 71 MTD opposition was timely filed 3 weeks after the MTD and 5 weeks PRIOR to the OSC. See ECM tab. <u>Result: the same OSC inferred no response existed by tolling the obligation to respond, yet specifically recognized the same response, then "tolls" it Doc.80 at 13, suspending Plaintiff's obligation to file the response already filed. (!?). Once the OSC recognized and struck Doc.71, the missing-response premise supplied no valid basis for issuing the OSC, nor using it as a basis for dismissal.</u> Nor was this contradiction isolated: the OSC referred Doc.80 at 2 it also recycled Doc. 67 as alleged "warning" history, and Doc.97 dismissal recycled this same docket-confused history in the dismissal. The OSC recycled Doc. 67 as warning history. Doc.80 at 1–2. That order no longer served any judicial purpose after Plaintiff had already refiled the shorter opposition, resulting in a now irrelevant post-facto extension approval order being repurposed into a container for adverse commentary, later recycled again to manufacture an adverse dismissal narrative. Doc.67 was post-facto because the Court did not timely rule on Plaintiff's requested extension before Plaintiff refiled the shorter opposition, four days earlier. Doc.80 at 2, 12–13; Doc.97 at 1, 4

footnote #2; Doc.67 at 3–6; Doc.68. That commentary was irrelevant to the extension ruling and should not have formed part of either the OSC or recycled in a dismissal analysis. Nor did Doc.67 show specific Plaintiff misconduct; it showed the Court's failure to recognize an already-filed Doc.9 response already docketed as Doc.68 then erroneously described as an opposition to Doc.54. (see ECM tab docket at 68, 54)

This structural confusion and contradictions in this OSC Doc.80 were later implemented by replacement Judge Pratt after Plaintiff had formally placed Judge Howard's alleged manifest bias and her OSC contradictions before the Court in Doc.86. Judge Pratt had these OSC contradictions before him but disregarded the Plaintiff's reply to that OSC Doc.84, which had clarified that the false non-response posture came from the Court's own ECM/docket treatment (see ECM tab docket at entry 80) reflecting the OSC's operative false inference to the lack of answer which was Doc.71. Similar docket-identification contradictions were repeated by docketing Plaintiff's opposition Doc. 68 to the Spears MTD Doc9, as the response to Kruss's MTD, Doc.54, while Plaintiff's actual opposition to Kruss's MTD was Doc.71. The court then issued Sua Sponte an OSC based on this distorted and contradicted docket, which was later used as the basis for a final dismissal narrative for ***"delay***" and ***"bad faith",*** dismissing the case and denying the disqualification motion itself as "moot" after his own 113 days of "delay" after

Judge Pratt assumed the bench to issue his first and only judicial act in this case: dismissal. Doc.97 at 15–16.

This dismissal order repeated the same document-confusion problems on Doc.97 at 4: while discussing Plaintiff's OSC response, citing Doc.54 at 6–8 for recognizing Plaintiff's admission was unaware of the specific Local Rule and "promptly corrected and refiled," even though Doc.54 was Kruss's MTD, not Plaintiff's OSC response. That same passage showed Plaintiff's good-faith correction once the rule issue was identified, yet the dismissal order used the confused document chain to support a bad-faith dismissal narrative.

**A. Order 80 did not provide clear notice concerning the 54/71 axis, within an already unstable record.**

The central notice defect centered on Docs. 54 and 71. Order 80 identified Doc.71 as Appellant's response to Doc. 54, analyzed it, and struck it, yet it treated the obligation to respond to that same motion as "tolled". Doc.80 at 12-13, Doc.54,Doc.71.

Doc. 68 confirms the docket instability: it was labeled as related to Doc.54, but its content corresponded to Doc.9 . That discordance between Court-created docket instability label/content mismatch demonstrated court confusion, not sanctionable

misconduct by Plaintiff, undermining any premise later used in the OSC and dismissal. Doc.68, Doc.9, Doc.54.

**B. Order 80 presented dispersed charges and mixed categories, without separating what conduct could justify dismissal.**

Order 80 accumulated citation problems, alleged rule violations, page limits, judicial notices, stricken documents, and other procedural defects throughout the order, Doc.80 at 1–13, but did not separate what was a technical error, defective citation, incorrect procedural vehicle, local rule violation, or conduct capable of justifying dismissal. That lack of delineation did not provide sufficient fair notice for an extreme sanction.

Ambiguous sanctions language aggravated the notice defect. Order 80 used expressions such as "appear to violate Rule 11, ***"it appears,"*** and ***"would likely support a finding"*** in areas where clarity was required. Doc.80 at 11. A severe sanction requires clear charges, not tentative premises with terminal consequences.

The references to burden, clutter, delay, or waste of resources did not establish causation; subsection F addresses the missing causal chain. Order 80 did not delineate what part of that narrative was a technical defect, alleged abuse, or conduct capable of justifying dismissal. Doc.80 at 4-5.

**C. Order 97 carried the confusion of Order 80 into the final dismissal.**

Order 97 converted that sanctions basis into dismissal. In particular, it carried forward the confusion around Doc.54 by attributing to that document a phrase from Appellant, although Doc.54 was the MTD of Defendant Gustavo Ramiro Kruss, not a filing by Appellant. Doc.97 at 4; Doc.54 at 6-8. That misattribution clearly demonstrates the instability of the record affected the final order, not only the show cause order.

Order 80 opened the sanctions process on that confused basis, and Order 97 converted it into dismissal. Although Appellant attempted to clarify the point by identifying Doc.71 as his opposition to Kruss's motion Doc.54, Order 97 adopted the same basis. Doc.80 at 12-13; Doc.84; Doc.54.

An extreme sanction cannot be sustained on dispersed charges, tentative language, mixed categories, and material confusion over which filing responded to which motion. Due process required clear charges and a real opportunity to respond. Here, those were absent. Order 80 did not provide specific notice, and Order 97 imposed dismissal on that basis. That was a violation of due process and requires vacatur. Independently, the resulting dismissal cannot be sustained because the underlying Order to Show Cause failed to provide constitutionally adequate notice of the specific conduct allegedly warranting termination of the action, failed to distinguish technical defects from sanctionable bad faith, and failed to identify the

legal and factual basis upon which dismissal itself could be imposed. Under these circumstances, the resulting dismissal failed to satisfy the minimum procedural safeguards required before imposition of a terminal sanction

## D. COURT CONVERTED NOTICE OF DEFENDANTS' STAY VIOLATION INTO OBSTRUCTION-BASED DISMISSAL

The Court ordered a discovery stay requested by Defendants. Doc.64 at 1–2.Soon after, Defendants Capital One and Kruss served Plaintiff with a deposition notice. Plaintiff filed judicial notice Doc,73 at 1-2, to notify the Court of Defendants' violation of the stay order, attaching both the deposition notice and the Court's stay order. The first distortion occurred in Doc. 80 at pages 6 and 12: the Court struck that notice of Defendants' stay violation as having *"no purpose,"* Doc.80 at p.6,11,12; then distorted that into an OSC sanctions framework claiming obstruction "hampering enforcement of a court order" and swept into its conclusion that it "delayed and disrupted the litigation". The second distortion occurred in Doc.97: where the dismissal order recycled that distorted OSC framework, Doc.97 at 2–4, asserting this as obstruction by "hampering enforcement of a court order," and converting this into a "bad faith" and "delay" narrative as basis to dismiss the case. Doc.97 at 15. <u>That is not causation. It is inversion</u>. The Court distorted the messenger of the stay violation directed against him, into the violator—effectively killing the messenger for the message.

HOWEVER, Doc73 did not merely assert a stay violation; it attached both the Court's discovery-stay order and the subsequent deposition notice served after that stay, placing the violation issue on the record before the Court struck the notice as having "no purpose."

## E. THE COURT ABUSED ITS DISCRETION BY MISCLASSIFYING JUDICIAL NOTICES AND COURT-DISTORTED CITATION CONDITIONS AS SANCTIONABLE BAD FAITH

Under Rule 11 and the Court's inherent authority, the Court was required to apply the correct legal standard and make specific findings. This required the Court to distinguish analytically different citation conditions before converting them into a finding of fabrication or bad faith. Rule 11 requires a reasonable factual basis, a reasonable legal basis, and the absence of improper purpose. Fed. R. Civ. P. 11(b); *Silva v. Pro Transport, Inc.*, 898 F.3d 1335, 1340 (11th Cir. 2018). Under inherent authority, bad faith is the "key" that permits sanctions; therefore, technical defects, citation errors, or imperfect filings cannot be converted into sanctionable conduct without a specific finding of bad faith. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–25 (11th Cir. 2017).

This analysis required distinguishing judicial notices, court-distorted citation conditions, attribution disputes, citation-form disputes, and stricken record-preserving filings from bad faith fabrication, abuse of process sufficient to justify

dismissal. Doc.97 further treated Plaintiff as **‘unable or unwilling’ to follow the Rules because Plaintiff did not conduct a prohibited ex parte meeting with the Judge, pretending to apply Local Rule 3.01(g) conference before filing a motion seeking judicial disqualification** for bias by the presiding judge, then incorporated that alleged rule violation into the broader misconduct and dismissal narrative. See Doc97 at 5, 15.

### a. DISTINCT RECORD EVENTS WERE IMPROPERLY AGGREGATED INTO A MANUFACTURED PATTERN OF BAD FAITH

The Order presented distinct episodes as a single chain of abusive conduct. But the sequence cited as "repeated violations" was not homogeneous and rested on inaccurate data:

• grouped Doc.4, a standard opening pro se procedural-advisement order later recast as part of a disciplinary warning chain

• the only document identifying concrete local rule violations, Doc.28;

• Doc.53, which struck Doc.51, cautioned that the Court would not act on notices and took no action on Doc.50 because no motion had been filed; never mentioned Rule 7(b) or find that Plaintiff violated it

• Doc.67 did not add a new category of violation and employed as recycled Bulk. It was a response-extension order, not a misconduct finding. It granted

time extension, and excused the technical defects in footnote 1. It also said Doc.62 sought no relief and required no action. Order 97 later treated that non-operative, post-facto commentary as if it were another violation.Doc.28 claims. Doc.67 at 3 n-1.

Doc.97 at 1–2;

Doc.4 at 1, 5–7;

Doc.28 at 1–2;

Doc.53 at 1–2;

Doc.67 at 3–5..

This manufactured grouping distorted distinct procedural events into an artificial appearance of a unified pattern but did not demonstrate multiple homogeneous violations or sanctionable bad faith.

b. **RECORD-PRESERVING JUDICIAL NOTICES WERE IMPROPERLY TREATED AS EVIDENCE OF BAD FAITH**

Functionally, the notices were not mere docket "clutter." Doc.80 at 4.. Nevertheless, the sanctions narrative distorted preservation-oriented judicial notices claiming them as part of a *"pattern"* of *"repeated violations" and "continued bad faith.", without judicial basis.* They are for function:

- preserving deadlines
- clarifying the Rule 26(f) process
- preserving objections for appeal

- documenting disclosures
- alerting to a violation of the discovery stay. The filing itself attached both the Court's stay order and the subsequent deposition notice served in violation of that stay.

A court's dislike of a judicial notice did not turn record-preserving notices into "clutter", "obstruction", or "bad faith".

Doc. 50 at 1–2, 5–9;
Doc. 51 at 1–2, 6–7;
Doc. 52 at 1–2;
Doc. 62 at 8–12;
Doc. 73 at 1–2, 4–7;
Doc. 64 at 1–2.

**c. THE RECORD REFLECTS COURT-DISTORTED ATTRIBUTIONAL AND CITATION-FORM CONDITIONS — NOT FABRICATED AUTHORITIES, NOT BAD FAITH**

A court-disputed citation, attribution question, reporter mismatch, or applicability dispute is not fabrication. *"Not found," "non-supporting,"* or imperfectly cited does not mean fabricated. The Court was required to distinguish fabricated authority from defective, confused, or non-supporting references. The record shows no fictitious cases, forged quotations, or knowingly invented authorities. Instead, the record reflects disputes concerning applicability, doctrinal scope, attribution, reporter association, procedural analogy, citation form, and other analytically distinct conditions, notwithstanding the Court's distortions of and substitutions for, many cited propositions before analysis, within otherwise existing authorities. The

dismissal order nevertheless repeatedly transformed those analytically distinct conditions through successive distortions and substitutions by the court, of the propositions actually advanced, into a unified fabrication and bad-faith narrative supporting dismissal. The dismissal order further disregarded Plaintiff's OSC response clarifications distorted those clarified conditions into alleged misconduct, and then used those court-created distortions and mismatches as support for dismissal and findings of bad faith.

The categorical variation reflected in the tables demonstrates that the cited issues involved distinct conditions — including clerical errors, attribution issues, scope limitations, citation-form inconsistencies, reporter mismatches, and context distinctions — rather than a uniform pattern of fabricated authority or sanctionable bad faith. The same applies to stricken filings: removal from the operative record does not transform it into abuse, frivolity, or bad faith. If the Court considered Docs. 71–76 improper, it had to identify the sanctionable defect—not use exclusion as cumulative evidence.

## F. A CLAIMED "PATTERN" IS NOT A FINDING AND CANNOT SUPPORT DISMISSAL WITHOUT ANALYSIS

It was not sufficient to aggregate analytically distinct record events and court-disputed citation conditions as if they carried equal sanction weight. To impose

dismissal, the Court was required to identify the specific conduct supporting sanctionable bad faith and explain how that conduct justified termination. Without that connection, the Order converted accumulation into bad faith. **Whatever label the dismissal order used, the record reflected distinct citation conditions—including existing authorities, Court-distorted authorities, reporter-reference mismatches, court-distorted attribution and location issues, and OSC-clarified propositions the Court ignored. (See Tables 1–4). The order then converted those distinct conditions, existing authorities, and record-preserving judicial notices into a bad-faith narrative dismissal.**

## G. THE COURT FAILED TO CONNECT ANY SPECIFIC ACT BY APPELLANT TO ANY SPECIFIC DELAY, DISRUPTION, OR PREJUDICE (Causation)

A court may manage its docket and require compliance with its orders, but it may not convert generalized language about procedural burden into a finding of bad faith without a concrete causal chain. Under its inherent authority, such a finding must be based on specific conduct—not on volume of filings or isolated defects. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223–24 (11th Cir. 2017).

Where the sanction is dismissal, the standard requires a clear record of delay or willful or contumacious conduct, together with an explanation of why lesser

sanctions would not suffice. *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337–38 (11th Cir. 2005).

Here, the Court relied on generalized language—such as "clutter the docket," "clog the docket and waste resources," and "delayed and disrupted the litigation"—to support conclusions of "repeated violations," "delay," "disruption," and "bad faith." Doc.97 at 15.

But before relying on that language to justify dismissal, the Court was required to identify:

- what specific act caused what delay,
- what harm resulted, and
- why that harm was attributable to Appellant.

That analysis does not appear in the record.

**a. DISTINCT PROCEDURAL EVENTS WERE IMPROPERLY DISTORTED AND COLLAPSED INTO A SINGLE INFERENCE OF BAD FAITH**

The Court grouped distinct events—judicial notices, technical errors, citation issues, stricken documents, conference disputes, page limits, and confusion over filings—as if all demonstrated a single pattern. At the same time, the Court treated pending motions raising attorney-authority defects, declaratory-relief requests, jurisdictional-nullity issues, and Rule 60(b)(4) validity challenges as sanction material while declining to adjudicate the

underlying validity issues presented. The Court did not apply a comparable aggregation analysis to the **defense filings of two defendants that were terminally late as a matter of law,** including the **procedural defects associated with counsel not presently admitted to practice before the Court whose filings were formally challenged** **with that challenge left unaddressed by the Court while the filings nevertheless remained operative** on the docket, **or the reassignment-related inactivity delay of 113 days following manifest bias disqualification prior to dismissal, with these delays distortively attributed to the Plaintiff in the dismissal order.**

But accumulation alone is not pattern; volume alone is not bad faith. Nor may analytically distinct citation conditions, judicial notices, attribution disputes, applicability disputes, and record-preservation filings be collapsed into a unified inference of sanctionable bad faith without individualized analysis.

To sustain such a finding, the Court was required to explain:

- what legally unified those events,
- how they demonstrated obstructive conduct, and
- what concrete delay or prejudice they caused.

Heterogeneous events cannot be collapsed into a single adverse inference of bad faith.

**b. THE SANCTIONS NARRATIVE FALSELY ATTRIBUTED AGGREGATE DOCKET ACTIVITY TO APPELLANT**

“The sanctions narrative presented the docket as though the aggregate activity reflected unilateral conduct by Plaintiff. The record cannot support that characterization. This was a multi-party litigation involving four defendants, multiple attorneys, motions concerning appearances and representation, extension requests, procedural disputes, and filings generated by the Court itself.

The docket activity attributed to Plaintiff was therefore not unilateral, exceptional, or disproportionate within the context of the litigation as a whole. To the contrary, Plaintiff’s filings as a single pro se litigant were comparable in volume to those of all four Defendants combined. The docket reflects:

Appellant: 38 entries

Appellees/Defendants: 32

Court: 28

Clerk/docket: 21.

ECM Tab, Docket History, Docs. 1–103.

Thus, the record does not support portraying Plaintiff as the singular source of docket congestion, delay, or disruption. Appellees/Defendants and the Court together generated substantially more docket activity than Plaintiff alone. The sanctions narrative nevertheless aggregated total litigation activity and falsely attributed that aggregate activity to Plaintiff as evidence of obstruction and bad faith.

The sanctions narrative falsely attributed aggregate docket activity to a single pro se litigant whose filings were comparable to those of all four Defendants combined. The record does not support portraying Appellant as the singular source of docket congestion, delay, disruption, or procedural burden.

Moreover, the record reflected substantial sources of delay and procedural activity not attributable to Appellant, but instead attributable to Defendants, reassignment-related inactivity, and by the Court itself:

• Capital One filed its Motion to Dismiss approximately 13 days after the ordinary Rule 12 deadline. Doc.11 at 1; Doc.34 at 1.

• Mr. Kruss filed his Motion to Dismiss approximately 27 days after the ordinary Rule 12 deadline. Doc.11 at 1; Doc.54 at 1.

• Following reassignment after the bias-related recusal proceedings, the successor district judge did not reengage the case before issuing the dismissal order 113 days later. Doc.97 at 16.

• Additional procedural activity arose from appearance issues, admission-related disputes, extension requests, and filings generated by Defendants, the Court, and the Clerk. Doc. 37 at 1–3; Doc.88 at 1; Doc.89 at 1; Doc.92 at 1–5; Doc93 at 1–6.

The sanctions narrative nevertheless falsely attributed "delay" and "disruption" to Appellant, when the records show the substantial delays **<u>were delays attributable only to two of the Defendants and the court itself.</u>** Additionally, before converting any procedural activity into "bad faith," the Court was required to identify what specific delay was caused by which specific act and why that delay justified dismissal. Instead, the resulting findings in the order reflected a gross distortion of the record. Further, a busy docket reflects activity; it does not establish sanctionable causation.

**c. BAD FAITH WAS IMPROPERLY INFERRED WITHOUT IDENTIFYING CONCRETE CAUSATION**

The Court did not analyze the judicial notices individually to determine causation. The resulting distortion of the adversarial record occurred not by operation of the Federal Rules, but by the removal of filings that had already

been entered and formed part of the case history. Doc.95 at 12–13. Instead, the Court improperly struck the judicial notices without valid justification, then distorted those same submissions as a cumulative block of "delay," "disruption," and "bad faith." Doc. 80 at 11–12; Doc.97 at 15. The court never showed that Plaintiff hampered enforcement of a court order; it distorted Plaintiff's notice reporting Defendants' stay violation as if the notice itself were the obstruction.

A judicial notice alerting the Court to relevant facts is not evidence of obstructive intent. Procedural confusion is not bad faith. The Order relied on an incomplete chain:

- judicial notices and questioned filings → docket congestion → delay/disruption → pattern → bad faith
- without proving the causal links.
- Without concrete causation, bad faith remained a conclusion—not a finding—and the resulting dismissal constitutes an abuse of discretion as a matter of law.

## H. THE COURT IMPOSED A TERMINAL SANCTION WITHOUT PROPORTIONALITY OR CONSIDERATION OF LESSER MEASURES

Dismissal as a sanction is an extreme measure. In the Eleventh Circuit, a dismissal with final effect requires a clear record of delay or contumacious conduct, together with a specific determination that lesser sanctions would not suffice. *Betty K*

*Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1337–38 (11th Cir. 2005); *Mingo v. Sugar Cane Growers Co-op. of Fla.*, 864 F.2d 101, 102–03 (11th Cir. 1989).

Rule 11 reflects the same principle of proportionality: any sanction must be limited to what is necessary to deter repetition of the conduct or comparable conduct. Fed. R. Civ. P. 11(c)(4).

Here, the Court imposed the most severe sanction without that calibration. The Court was required to identify sanctionable conduct by Appellant and explain why a lesser measure would not have been sufficient before terminating the case. Doc.97 at 15.

The Order did not calibrate the sanction to any factually demonstrated bad faith, obstruction, or Appellant-caused disruption. Instead, the record reflects selective escalation: judicial notices, record-preserving filings, and court-distorted citation conditions became dismissal grounds, while substantially more serious procedural defects involving Defendants and counsel were shielded from comparable consequences and remained operative. Those defects included Rule 12(a)(1)(A)(i) deadline violations extending approximately 30 and 48 days beyond the 21-day response deadline, sua sponte RETROACTIVE deadline “accommodations” removing mandatory Rule 55(a) default procedures, without request for extension PRIOR to the deadline, and without the required “good cause” justification

announced in the phantom order which violated the following Rules governing the existence and entry of a valid judicial order. The docket reflects no signed written order and filed with the Clerk corresponding to placeholder #55, as reflected by Rule 79(a), Rule 58(a), and In re Southeast Bank Corp., 97 F.3d 476, 478–79 (11th Cir. 1996). Notwithstanding the absence of any written, signed and entered judicial act, there was no timely Rule 6(b)(1)(A) request before expiration of the deadline, and the unresolved unadmitted attorney-authority issues involving counsel—remained operative without comparable consequences, in addition to the absence of required notices of appearance by two defense attorneys at the time of dismissal.

An extreme sanction must be proportionate to the actual prejudice demonstrated on the record and to the seriousness of the conduct genuinely shown. The Order contains no finding that lesser corrective measures were considered, no analysis explaining why lesser sanctions would have been ineffective, and no discussion of why ordinary procedural remedies could not address the perceived defects. Instead, the case was terminated outright.

That omission is especially significant where the filings identified by the Court included record-preserving judicial notices, jurisdictional notices, and procedural

objections submitted to preserve issues for review. The Court did not identify conduct by Appellant that justified termination of the action.

The Eleventh Circuit repeatedly has cautioned that dismissal with final effect is a sanction of last resort. *Betty K Agencies*, 432 F.3d at 1339. Before imposing such a sanction, the Court was required to determine whether lesser remedies—such as striking a particular filing, requiring amendment, limiting future filings, monetary sanctions, or narrowly tailored procedural restrictions—would adequately address the conduct at issue. The Order contains no such analysis. Doc.97 at 15–16.

Nor did the Court identify any concrete prejudice suffered by Defendants that could justify the ultimate sanction of termination. The litigation remained in an early procedural posture. Discovery had not meaningfully progressed. No trial date had been set. No showing was made that Defendants were unable to respond to filings, comply with deadlines, or defend the case on the merits. The absence of demonstrated prejudice further underscores the disproportionality of dismissal.

The dismissal therefore must be evaluated according to its practical effect on the litigation, rather than solely by the label "without prejudice". Because the Order imposed the harshest available **sanction without the findings required by Eleventh Circuit precedent, without consideration of lesser alternatives, and without demonstrated prejudice proportional to termination of the action,** the

dismissal exceeded the bounds of proportional case management and operated instead as punitive destruction of the action itself. Order 97 repeatedly substituted different propositions for the propositions actually advanced by Plaintiff, then treated the resulting court-created mismatches as evidence of fabrication and bad faith. The Miller discussion illustrates that pattern: although Plaintiff clarified the cited proposition and identified Miller as a valid published Ninth Circuit authority, the dismissal order instead analyzed an unrelated footnote discussion and converted the resulting mismatch into sanctions support.

The following tables, based on Order 97, show distinct categories—not a uniform category of "fabricated authority". See also *Silva*. The table cases are shown because Order 97 used or distorted them; they are not listed here as new appellate authority.

**Table 1. Court-Distorted Existing Authorities and Reference Conditions**

The portions in the order addressing Doc.97 at 5–7 reflect materially different citation conditions, including existing authorities, known WESTLAW citation location and adjacent-page mismatch conditions , and court originated distortions of what was actually cited, which the dismissal order collectively transformed into a fabricated-authority and bad-faith dismissal narrative.

| **DISPUTED AUTHORITY** | **DISTORTIONS REFLECTED IN DOC.97 DISMISSAL ORDER** | **WHY DISTORTION FAILS ORDER** |
|---|---|---|
| United States v. Valencia-Trujillo | Improperly Distorted into a "standing issues" discussion while ignoring Plaintiff's expressly stated judicial-notice preservation rationale | **EXISTING Eleventh Circuit authority**. Plaintiff expressly stated the preservation principle in answering the OSC. The dismissal order ignored the stated rationale and distorted the citation into sanctions evidence. **Cannot sustain a "bad faith" narrative.** |
| Gamble | Distorted into non-judicial-notice authority while ignoring Plaintiff's expressly stated constitutional and due-process rationale. | **EXISTING Supreme Court authority**. Plaintiff asserted the same judicial-notice preservation rationale stated in answer to OSC, then order ignored rationale and distorted the citation into sanctions evidence. **Cannot sustain a "bad faith" narrative** |
| In re Sun Healthcare Grp., Inc. | Westlaw-originated cite location/ adjacent-page mismatch treated as fabricated authority | Dismissal ignores that this was clarified in answer to OSC. **EXISTING CASE. Cannot sustain** "fabrication" or "bad faith" narrative. |

**Table 2. Court-Distorted Existing Authorities and Applicability Narratives.**

The portion of the order addressing Doc.97 at 7–8 likewise reflects citation-association **transposition and court-created applicability distortions involving existing authorities, which the dismissal order transformed into "fabrication and bad-faith dismissal findings".** Doc.**97 at 7–8.**

The Ashley citation arose in adversarial briefing opposing a MTD, not in an affirmative representation to the Court. Ordinary applicability disputes arising in

adversarial dismissal briefing are normally resolved through adversarial rebuttal and ordinary motion practice, not immediate sua sponte fabrication and bad-faith dismissal escalation. The OSC response clarified the transposition issue and identified an existing Ashley authority cited for jurisdiction, due-process fairness, standing, and adjudicatory issues relevant to the dismissal posture of the underlying circuit-court action. But the dismissal order ignored this normal adversarial process and sua sponte reframed the citation into unrelated wrongful-foreclosure subject matter before preserving fabrication and bad-faith dismissal findings while ignoring the clarified proposition actually advanced. Doc.71 cited Perez and Ashley together in opposition to the MTD for the same proposition directly applicable to the underlying circuit-court action —<u>that federal statutory violations, jurisdictional defects, standing defects, and due-process violations warranted adjudication rather than dismissal, instead the court sua sponte isolated and distorted the clarified citation into a fabrication-supporting dismissal material despite the clarification itself and without ordinary adversarial litigation of the issue</u>. Doc.71 at 5.

| **DISPUTED AUTHORITY** | **DISTORTIONS REFLECTED IN DOC.97 DISMISSAL ORDER** | **WHY DISTORTION FAILS ORDER** |
|---|---|---|
| Miller v. County of | Court distorted the clarified proposition and evaluated a different jurisdictional rationale | Existing authority cannot sustain fabrication or bad-faith dismissal narrative after the |

| DISPUTED AUTHORITY | DISTORTIONS REFLECTED IN DOC.97 DISMISSAL ORDER | WHY DISTORTION FAILS ORDER |
|---|---|---|
| Santa Cruz | than the one actually advanced | court distorted the clarified proposition actually advanced into sanctions material. |
| Ashley v. Bank of America | OSC response clarified transposition issue; court sua sponte distorted it into unrelated wrongful-foreclosure subject matter, then converted the citation into fabrication and bad-faith narrative while ignoring the clarified proposition actually advanced. | Clarified OSC-reply transposition and court-distorted substitution cannot sustain a bad-faith dismissal narrativefabrication or bad-faith dismissal narrative. |
| Graves v. Smith's Transfer Corp. | Existing authority court-distorted into sanctions-supporting applicability narrative ignoring it involved ordinary legal applicability issues | **EXISTING** authority. Court-distorted applicability rationale cannot sustain fabrication or bad-faith dismissal narrative. |

**Table 3. Court-distorted Existing Authorities and Reporter and Reference Conditions**

The portion of the order addressing Doc.97 at 9–12 collapses scope limitations, page mismatches, attribution issues, and reporter-reference defects **within <u>existing</u>** authorities, which the dismissal order later **transformed into fabrication and bad-faith dismissal findings without separately establishing that the underlying complaint itself failed modern federal pleading standards.** Source: Doc.97 at 9–12.

| DISPUTED AUTHORITY | DISTORTIONS REFLECTED IN DOC.97 DISMISSAL ORDER | WHY DISTORTION FAILS ORDER |
|---|---|---|
| Scheuer v. Rhodes | Court-recognized existing authority later reframed through modern doctrinal limitations **<u>not shown to bar or even apply to the underlying complaint</u>** | **EXISTING.** Court-recognized existing authority later treated as a sanctions-supporting doctrinal defect. Cannot sustain "fabrication" or "bad faith" dismissal narrative. |
| Local Rule 3.01(g) | Plaintiff's failure to conduct a prohibited ex parte Local Rule 3.01(g) conference with the presiding judge before filing a judicial-disqualification motion was treated as evidence Plaintiff was 'unable or unwilling' to follow Rules supporting dismissal. | Misapplied Local Rule 3.01(g) by treating refusal to engage in prohibited ex parte judicial conferral before filing disqualification motion as dismissal-supporting misconduct. Cannot sustain "bad faith" dismissal narrative. |
| Phillips v. Phillips | The Court substituted different reporter occupants for the cited Phillips authorities, then | Court-substituted reporter occupants and substituted-case evaluation cannot support |

| DISPUTED AUTHORITY | DISTORTIONS REFLECTED IN DOC.97 DISMISSAL ORDER | WHY DISTORTION FAILS ORDER |
|---|---|---|
| | evaluated the substituted cases rather than Plaintiff's stated proposition in the OSC response, and elevated the resulting reporter/name mismatch into fabrication-supporting misconduct despite prior clarification of the citation condition. | fabrication or bad-faith dismissal narrative. Cited proposition involved ordinary state appellate procedural issues. |
| Brydger v. Brydger | The Court substituted different reporter occupants for the cited Brydger authorities, disregarded Plaintiff's clarified proposition in the OSC response, evaluated the Court's substituted cases instead, and elevated the resulting name/reporter mismatch into fabrication-supporting misconduct despite prior clarification of the citation condition and proposition | Court-substituted reporter occupants and substituted-case evaluation cannot support fabrication or bad-faith dismissal narrative. Cited proposition involved ordinary legal issues. |
| United States v. Teamsters | The cited Teamsters authorities were expressly recognized by the Court as existing cases Both Cited cases support the stated argument proposition stated in the response to the OSC. The dismissal order nevertheless used possibly misplaced quotation marks as a principal reason for a bad-faith dismissal narrative. (**These** quotation marks **became dismissal material??)** | **EXISTING** The dismissal order did not allege fictitious authority, fabricated citations, or nonexistent case law, but instead **EXISTING** .Relied on a quotation-mark-attribution issue involving an admittedly existing case, to support a bad-faith dismissal narrative. Cannot sustain a 'bad faith' dismissal narrative. |

| DISPUTED AUTHORITY | DISTORTIONS REFLECTED IN DOC.97 DISMISSAL ORDER | WHY DISTORTION FAILS ORDER |
|---|---|---|
| Advisory Opinions | Recognized existing advisory opinions were narrowly recharacterized, then over-generalized by the Court into unsupported applicability disputes despite directly addressing structural conflict, dual-office conflict, and divergent governmental interests central to the motion. | **EXISTING.** The cited advisory opinions directly support the stated structural-conflict, dual-office conflict, and divergent-governmental-interest concerns advanced in the motion. The dismissal order disputed applicability only and did not allege fictitious authority, fabricated citations, or nonexistent case law. Cannot sustain a fabrication or bad-faith dismissal narrative. |

**Table 4. Court-Distorted Citation Conditions Cannot Sustain a Fabrication and Bad Faith Narrative**

The portion of the order addressing Doc.97 at 13–14 collapsed materially different citation conditions — including recognized authorities, citation-form irregularities, court-distorted case substitutions and context disputes, and procedural notice defects — into a unified dismissal-supporting misconduct narrative. Doc.97 at 13–14.

| DISPUTED AUTHORITY | DISTORTIONS REFLECTED IN DOC.97 DISMISSAL ORDER | WH WHY DISTORTION FAILS ORDER |
|---|---|---|
| Fletcher | Court admitted it identified cite despite reporter-number mismatch. Same parties, same state. Existing | **EXISTING.** EXISTING. Reporter-number mismatch cannot sustain fabrication |

| DISPUTED AUTHORITY | DISTORTIONS REFLECTED IN DOC.97 DISMISSAL ORDER | WH WHY DISTORTION FAILS ORDER |
|---|---|---|
| | related case. | dismissal narrative. |
| cDraw | Court recognized authority and distorted cite proposition to "sanctions for litigation misconduct" only, ignoring that the case included sanctions, recusal/impartiality, litigation misconduct, and integrity-of-proceedings concerns applicable here. | **EXISTING** authorities. Court-distorted applicability claim cannot sustain a "bad faith" dismissal narrative. |
| Hatten / Rey | Court recognized case, but Court distorted existing authorities of broader procedural-error applicability principles, using distortion as dismissal-supporting misconduct despite the authorities containing broader principles supporting their proposed use. | **EXISTING.** Does not demonstrate bad dismissal faith narrative |
| Furr | Use of Doc.93 cite violates Rule 11(c)(1) because Doc.93 was not part of the OSC. Notwithstanding, the cited proposition appears in many MD cases recognizing exceptions to Rule 3.01(g), including clerk-directed or ministerial petitions where opposing counsel lacks authority to oppose. | **NOT APPLICABLE** Not OSC noticed. Existing Rule 3.01(g) exception principles cannot sustain dismissal narrative. |

Taken together, when examined by category, rather than collectively or through conflated collective characterization, the cited conduct does not support a finding of "bad faith". The cited conditions instead reflected published-authority

mismatches, reporter-reference defects, clerical transpositions, attribution issues, context distinctions, citation-form inconsistencies, and disputes concerning the scope, breadth, doctrinal extension, analogy, or applicability of otherwise existing authorities. **Those heterogeneous categories are analytically distinct from fabricated authority and cannot properly be conflated into a unified inference of sanctionable bad faith. The district court's treatment of those distinct categories as collectively demonstrating fabrication or bad faith was therefore analytically overbroad.**

## 9. DISMISSAL WITHOUT RESOLVING THE VALIDITY OF THE PROCEEDINGS DOES NOT CONSTITUTE A PROPER ADJUDICATION

This action sought declaratory relief concerning the legal validity of proceedings and actions reflected on the docket. The district court dismissed the action without resolving those issues.

As set forth in the preceding sections, the record reflects reliance on a docket entry for which no written order appears, acceptance of untimely filings without application of the governing Rules, and disposition of the case without adjudication of pending matters and claims.

**Because the action was terminated without resolving the issues presented, the dismissal does not reflect a determination of the** action and therefore does not

constitute a final adjudication of the claims presented. **The actions at issue were taken in the clear absence of jurisdiction, were ultra vires, and are without legal effect.**

**A disposition entered upon such proceedings cannot constitute a valid adjudication.**

For these reasons, and for the reasons set forth in the preceding sections, the dismissal should be vacated and the case remanded for adjudication of the issues presented.

## VI. CONCLUSION AND RELIEF REQUESTED

Materially very serious procedural defects attributable to Defendants—including expired Rule 12 deadlines, displaced Rule 55 consequences, retroactive acceptance of untimely filings, unresolved attorney-authority defects, and counsel-related designation and authority violations implicating Local Rules 2.01(a) and 2.02(a), including unresolved appearance and local rule lead-counsel designation violations involving attorneys Gold and Spears—received **RETROACTIVE CORRECTIVE ACCOMMODATIONS after rule-based consequences had already attached**, effectively shielding Defendants and counsel from consequences imposed by the same Rules, while Plaintiff's alleged clerical citation-related and record-preserving judicial notices were repeatedly distorted,

conflated, and converted into findings of bad faith and dismissal without clear legal reasoning.

Appellant respectfully requests that this Court reverse the district court's dismissal and remand with instructions restoring the action to the procedural posture reflected on the docket before the retroactive procedural effect caused by the court's treatment of the electronic placeholder at #55. Those deviations included unresolved validity issues, selective procedural enforcement, reliance upon non-reviewable procedural acts, and the failure to adjudicate the underlying declaratory-relief questions presented**. Those deviations reflect the application of incorrect legal standards, <u>and failure to apply mandatory procedural Rules according to their plain operation, constituting reversible error and manifest abuse of discretion as a matter of law.</u>** The dismissal rationale further aggregated heterogeneous filings—including record-preserving judicial notices and jurisdictional filings—without identifying how those filings independently justified bad-faith findings or dismissal.. **<u>The resulting dismissal cannot be sustained because the court never explained how the cited filings justified findings of bad faith and dismissal, while materially very serious procedural defects attributable to Defendants received retroactive corrective "accommodations" after rule-based consequences had already attached.</u>**

Specifically, Appellant requests that this Court:

1. Reverse the order of dismissal Doc.97 and vacate the judgment
2. Order restoration to the **status quo ante**, including reinstatement of all motions and filings displaced, struck, or rendered ineffective by the retroactive procedural effect attributed to the electronic placeholder at #55, and reinstatement to the procedural posture that existed immediately before that treatment altered the case;
3. Direct the district court to **adjudicate all pending motions reflected on the docket**, including:
   - motions for entry of default under Rule 55(a),
   - motions addressing unauthorized filings,
   - and filings establishing admissions by omission under Rule 8(b)(6);
4. Direct enforcement of the mandatory provisions of Rule 12(a)(1)(A)(i) and Rule 55(a), including proper consideration of whether default procedures were triggered by Defendants' failure to timely respond;
5. Direct the district court to determine the legal effect of filings submitted on behalf of a corporate party by counsel not admitted to practice before the court, whether such filings were improperly shielded from being struck, and whether such filings are subject to being struck;
6. Direct the district court to adjudicate the **declaratory relief claims presented in the operative complaint**, including:
   - whether Defendants' conduct violated federal law,

- whether the state court judgment was rendered in violation of federal law,
- and whether Appellant's constitutional rights were violated;

7. Direct the district court to address the **record integrity issues reflected on the docket**, including:
    - an electronic reference unsupported by any signed written order and filed with the Clerk,
    - modification of docket entries after filing,
    - and the removal or striking of filings documenting record-based defects;
8. Direct vacatur of proceedings, rulings, sanctions-related determinations directed against Plaintiff that were materially implicated by the unresolved recusal-triggering allegations on manifest bias presented under 28 U.S.C. § 144 and § 455, where Plaintiff's motion for disqualification Doc.86 was filed on November 5, 2025, reassignment occurred the same day Doc.67, no adjudication negating the recusal-triggering allegations ever occurred prior to reassignment, yet the motion was later purportedly denied as "moot" 113 days later (court's delay, not Plaintiff) within the dismissal order after reassignment had already occurred, while the affected proceedings and rulings nevertheless remained incorporated into the dismissal and sanctions narrative challenged on appeal under the principles recognized in Liljeberg and Parker;
9. Remand for further proceedings consistent with this Court's opinion and the Federal Rules of Civil Procedure, including proceedings based upon

reviewable written, signed, and filed judicial acts reflected on the docket and capable of meaningful appellate review. The dismissal cannot stand because the Order to Show Cause relied upon materially distorted characterizations of distinct procedural events, failed to distinguish curable defects from sanctionable bad faith, and culminated in dismissal without the procedural safeguards required before imposition of a terminal sanction. The dismissal was further undermined by retroactive procedural effect attributed to the electronic placeholder at #55, unsupported by any written, signed, and filed order, after Rule 12(a) deadlines and Rule 55(a) consequences had already attached. To the extent the record reflects pejorative or disparaging language against the pro se Plaintiff in the order on appeal bearing on the appearance of impartiality, Appellant preserves the right to seek additional relief, including reassignment or other appropriate remedial measures, as necessary to ensure proceedings consistent with the unresolved recusal-related, due-process, and record-integrity issues reflected on the docket and incorporated into the dismissal challenged on appeal. The Court's disregard of procedure was not clerical or incidental; it was a conscious choice reflected on the docket. The District court repeatedly disregarded procedural rules while dismissing the case based on an error-ridden manufactured narrative.

**Respectfully Submitted**

/s/ Charles C. Force
Pro Se Appellant

**VII. CERTIFICATE OF SERVICE**

I certify that on June 4, 2026, I electronically filed the foregoing Brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system, which will serve all registered counsel and parties of record. Appellant's Brief by U.S. Mail, postage prepaid, upon Michael A. Gold at the following addresses:

Michael A. Gold, The Barry A. Cohen Legal Team
201 E Kennedy Blvd., Suite 1950, Tampa, Florida 33602

Michael A. Gold, Pollack & Rosen, P.A.
806 Douglas Road, South Tower, Suite 200
Coral Gables, Florida 33134

/s/ Charles C. Force
Pro Se Appellant

**VIII. CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,983 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the body of this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman

/s/ Charles C. Force
Charles C. Force
Pro Se Appellant